Merrick, P.J.
Plaintiff David A. Brossi, Trustee of the Simon Antonio Trust (the “Landlord”), brought this action against his former tenant, defendant David W. Fisher (the ‘Tenant”), to recover for damages caused by the Tenant to his rented apartment and to the unit below it. The Tenant counterclaimed for his last month’s rent, which had been paid in advance, and interest on the same under G.L.c. 186, §15B(2) (a); for loss of personal property; for violations of G.L.C. 93A; for breach of the covenant of quiet enjoyment and for wrongful eviction under G.L.c. 186, §14. Pursuant to Chapter 358 of the Acts of 1996, the case was tried before a jury of six in the Framingham Division of the District Court Department. The Chapter 93A counterclaim was decided by the trial judge.
In November, 1987, the Tenant rented apartment number 3 in the Landlord’s building at 47 Walsh Street in Framingham. The Tenant paid $700.00 in advance for the last month’s rent, but received no interest on the money held by the Landlord after 1987. In 1996, the Landlord commenced a summary process action against the Tenant to recover possession of the apartment. That action was concluded in April, 1996 by the parties’ agreement for judgment which granted the Landlord a judgment for possession, and gave the Tenant a stay of execution on the judgment until May 1,1997.
On October 2,1996, the Landlord, and then the police and the Framingham Building Commissioner, were called to the Tenant’s apartment as the result of a complaint by the downstairs neighbor. The neighbor had returned from a trip to find that her apartment was flooded and had a very strong, unpleasant odor. After a 45 minute standoff during which the Tenant refused to admit anyone into his apartment, the Landlord, police and town officials entered and discovered a pipe burst, which the Tenant admitted had happened a week earlier and had not been reported to the Landlord. They observed huge quantities of *100 trash and garbage in the apartment, and an odor that made it difficult for the Building Commissioner to breathe. They also observed piles of paper towels, rotting food and human waste on the floor. The bathroom sink was covered with a half-inch layer of growing mold. The line taking water and garbage from the garbage disposal in the kitchen sink had been directed to the floor. The refrigerator was full of rotting food. As the trial judge noted in his findings, which were amply supported by the evidence:
The conditions in the apartment which were directly attributable to the tenant were deplorable. Anyone viewing the photographic evidence in this case would have great difficulty comprehending how a human being could choose to live in such filth and under such unsanitary conditions.
The Building Commissioner condemned both the Tenant’s apartment and the one below it, posted notices to that effect, and ordered the tenants to vacate. The Board of Health ordered the Landlord to repair the conditions.
By way of repair, the Landlord had all debris thrown into a dumpster. Kitchen cabinets, not only filthy but burned, were discarded and replaced. The garbage disposal, refrigerator, stove and stove hood, subfloor, floor tile and ceramic tile were all replaced, as were the bathroom sink and toilet. The Landlord paid an estimated $18,000.00 to subcontractors and to his own employees for all of the work, and received some insurance reimbursement. The work was performed during the remainder of October, and the Tenant paid no rent for that month.
The Landlord changed the locks on the doors of the apartment. The Tenant returned to the apartment to remove personal property while the work was being done. Other than that visit, the Tenant never contacted the Landlord to regain possession of the apartment or made any attempt to return.
All personal property of the Tenant’s which had not been dumped as trash was placed in a storage unit at the Landlord’s expense. The Landlord offered to have the property delivered anywhere within a 100 mile radius.
After trial, the jury returned a verdict for the Landlord on his complaint for damages in the amount of $6,350.00. The jury also found for the Landlord on the Tenant’s counterclaims for constructive eviction, breach of quiet enjoyment, conversion of personal property and return of the last month’s rent. On the Tenant’s G.L.c. 186, §15B(2)(a) counterclaim for interest on the last month’s rent, the jury followed the judge’s instruction to treble any interest due and awarded $409.40 to the Tenant. The jury also awarded $1,000.00 to the Tenant on his counterclaim for damage to personal property.
The trial judge found for the Tenant on his G.L.c. 93A counterclaim solely on the basis of the Landlord’s violation of G.L.c. 186, §15B(2) (a). As damages had already been awarded and trebled by the jury, the judge assessed only $25.00 in damages and $600.00 in attorney’s fees on the counterclaim. The judge further found that in the circumstances of this case, the Landlord’s G.L.C. 93A violation was not “willful or knowing.” The judge also allowed a G.L.c. 231, §6F motion by the Landlord for attorney’s fees for the Tenant’s frivolous counterclaims, and assessed $1,837.34 in counsel fees and costs.
On this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal, the Tenant charges error in the trial judge’s (1) instructions to the jury on constructive eviction, including abandonment, and on loss of use of the apartment during repairs as *101 an offset to the last month’s rent,[2] (2) refusal to rule on certain requests for rulings of law, (3) evidentiary rulings on testimony as to damages, (4) allowance of the Landlord’s G.L.c. 231, §6F motion and (5) denial of the Tenant’s motion for a new trial.
1. Several of the issues raised by the Tenant bear upon the question of the procedures to be followed in the trial of civil cases before a jury of six in the District Court under Chapter 358 of the Acts of 1996. Chapter 358, entitled “An Act Establishing a One Trial System for Civil Cases in Norfolk and Middlesex Counties,” was the Legislature’s response to the growing inefficiencies of the “transfer system” of removal, remand and appeal of civil cases between the District and Superior Courts.[3] Chapter 358 created a temporary,[4] statutory experiment in Middlesex and Norfolk Counties under which civil cases, formerly subject to the transfer system, are entitled to a single trial in either the Superior or District Court depending on the reasonable likelihood that damages will exceed or be less than a jurisdictional dollar amount. Based on such amount, cases previously subject to removal and transfer remain within the original and exclusive jurisdiction of either the District or Superior Court. Section 3 of Chapter 358 grants the District Court equitable powers in cases ordinarily within District Court jurisdiction, but the statute does not otherwise expand District Court jurisdiction. The Superior Court retains exclusive jurisdiction of those statutory causes of action heretofore assigned to it. See, for example, G.L.c. 258 (Massachusetts Tort Claims Act); G.L.c. 231A (Declaratory Judgments); and G.L.c. 214, §1B (Invasion of Privacy).
*102 With regard to general procedures at trial, Section 8 of Chapter 358 provides:
The justice presiding over a jury of six session shall have and exercise all powers and duties which a justice sitting in the superior court department has and may exercise in the trial and disposition of civil cases including the power to report questions of law to the appeals court.
Trials by juries of six shall proceed in accordance with the provisions of law applicable to trials by jury in the superior court. ...
By its very nature as a temporary experiment designed only to remedy problems inherent in the transfer system, Chapter 358 does not specifically address every conceivable interaction of its provisions with those of other statutes which deal with civil procedure. We have concluded that the statute was not intended to alter any other legislative policies. Residence Inn by Marriott, Inc. v. Flavel, 1998 Mass. App. Div. 170, 171.
2. The Tenant has appealed the judge’s instructions to the jury on constructive eviction (including abandonment) and loss of use of the apartment during repairs as an offset to the last month’s rent. The Tenant has, however, failed to preserve for appellate review any issue as to these jury instructions.
Rule 51(b) of the Mass. R. Civ. R provides:
At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection....
The record does not reflect whether written requests for jury instructions were filed at the close of the evidence. It is plain, however, that Tenant’s counsel did not object to the charge after it was given and before the jury retired to consider a-verdict. In the District Court, as in the Superior Court, a party who fails to comply in a timely manner with the Rule 51(b) requirements of objecting to the charge and stating the basis of such objection “forfeits his right to complain on appeal of the giving or omission of an instruction." Jarry v. Corsaro, 40 Mass. App. Ct. 601, 603 (1996). See also Flood v. Southland Corp., 416 Mass. 62, 66-67 (1993).
3. The Tenant’s G.L.c. 93A counterclaim was properly heard and decided by the trial judge rather than the jury. Nei v. Burley, 388 Mass. 307, 315 (1983); Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 340 (1983). After the jury’s verdict and during the G.L.c. 93A hearing, the Tenant submitted requests for rulings of law. The judge ruled on only those requests which pertained to the *103 G.L.c. 93A counterclaim,[5] and declined to rule on the remaining requests which addressed issues submitted to the jury. The Tenant has appealed the judge’s refusal to rule on the latter requests.[6]
The short answer to the Tenants argument is that Mass. R. Civ. P., Rule 64A requests for rulings of law are “the only certain means by which a party can secure a separation of law from fact in cases tried without a jury [emphasis supplied].” DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 103-104 (1975). See also Cooperstein v. Turner Bros. Constr., Inc., 1992 Mass. App. Div. 249, 250. As such, requests for rulings of law have no place or significance in a case submitted to a jury. The law applied to the facts in a jury case is the judge’s instruction to the jury.
4. The Tenant has also challenged certain evidentiary rulings by the judge which permitted the Landlord to testify as to the value of his property, and which excluded the Tenant’s testimony as to the value of some of his personal property. The argument in the Tenant’s brief is general and makes no specific transcript reference to any particular rulings. Our decision on the issue will be equally general.
An owner of property familiar with it and its uses and characteristics may testify as to its value. [Citation omitted]. Evaluation of the witness’ familiarity, knowledge, and experience is for the trial judge and his decision is conclusive unless upon the evidence it [is] erroneous as [a] matter of law.
Von Henneberg v. Generazio, 403 Mass. 519, 524 (1988). See also Blais-Porter, Inc. v. Simboli, 402 Mass. 269, 272-273 (1988); Larabee v. Potvin Lumber Co., 390 Mass. 636, 643 (1983); Rubin v. Arlington, 327 Mass. 382, 384 (1951). It cannot be said that the judge’s rulings herein were erroneous as a matter of law. Once the judge determined that a proper foundation had been laid as to the Landlord’s familiarity, knowledge and experience with the property, testimony about value was admissible. It was then left for the jury as the trier of *104 fact to assess the weight and credibility of the testimony in reaching a final decision on damages. Menici v. Orton Crane & Shovel Co., 285 Mass. 499, 505 (1934). We note also that the Tenant made no offer of proof as to the excluded evidence of his. Mass. R. Civ. R, Rule 43(c). In the absence of such an offer, no prejudice is shown. Cooke v. Walter Kidde & Co., 8 Mass. App. Ct. 902, 903 (1979).
The Tenant also argues that the Landlord should not have been permitted to testify as to estimates of the costs to repair his building when records of the actual costs should have been available. “Any inconsistencies, omissions or flaws [in opinion evidence] may be explored through cross-examination to affect the weight of such evidence, but such inconsistencies, omissions or flaws do not affect the admissibility of such evidence.” Sacco v. Roupenian, 409 Mass. 25, 30 (1990). See Mitchell v. Pierce, 10 Mass. App. Ct. 813 (1980). The Landlord was, in fact, cross-examined in this case, and the jury ultimately awarded the Landlord only $6,350.00 on his original claim of approximately $18,000.00.
5. On still another issue involving the effect of the experimental one-trial statutory scheme upon other statutes regulating civil procedure, the Tenant argues that the judge erroneously imposed sanctions of counsel fees and costs upon the Tenant pursuant to G.L.c. 231, §6F, which “provides for the assessment of reasonable costs, including attorney’s fees, incurred in litigation against a party who has advanced defenses which are wholly insubstantial, frivolous, or not made in good faith.” Masterpiece Kitchen & Bath, Inc. v. Gordon, 425 Mass. 325, 328 (1997). The record supports the trial judge’s finding that the Tenant’s claims, which occupied most of the lengthy trial of this case, were insubstantial and frivolous. However, even under Chapter 358, a judge in the District Court lacks jurisdiction to act under §6F. Although the Tenant, inexplicably, has not raised the issue of jurisdiction, “[i]t is our duty to note and decide a jurisdictional question ‘regardless of the point at which it is first raised,’ and whether any party has raised it.” Karbowski v. Bradgate Assoc., Inc., 25 Mass. App. Ct. 526, 527 (1988). See also Jamgochian v. Dierker, 425 Mass. 565, 567 (1997).
Section 6E of G.L.c. 231, which lists the courts to which §6F is applicable, does not include the District Court. “As this Division has repeatedly stated, it is clear from G.L.c. 231, §6E that ‘§6F authority has not been extended to the District Court Department.’” Ascoli v. Building 19 7/8, 1997 Mass. App. 169, citing Nissenbaum v. McGovern, 1995 Mass. App. Div. 153, 154. See also Marino v. Kandris, 1997 Mass. App. Div. 129, 131 and cases cited.
It may be argued, and indeed the trial judge ruled, that authority to act under §6F is implied by the language of St. 1996, c. 358, §8 which we have quoted above that “[t]he justice presiding over a jury of six session shall have and exercise all powers and duties which a justice sitting in the superior court department has and may exercise in the trial and disposition of civil cases.” However, the pointed omission in G.L.c. 231, §6E of the District and Municipal Courts from the list of courts authorized to act under §6F amounts to a legislative determination that parties in cases of the size and type within the jurisdiction of those courts should not be threatened with the sanctions permitted by that statute. As we have noted, Chapter 358 does not expand the jurisdiction of the District Court, nor do we interpret it to vary any other established legislative policies. We do not think that the Legislature, by providing a jury trial in *105 the District Court rather than a removal or appeal to Superior Court, intended to expose parties seeking redress in District Court cases to §6F sanctions.[7]
Interestingly, the Landlord argues that only the Appeals Court, and not this Appellate Division, has jurisdiction to review the appeal of the judge’s G.L.c. 231, §6F order in this case. See Palmer v. Murphy, 42 Mass. App. Ct. 334, 341-342 (1997) and Bailey v. Shriberg, 31 Mass. App. Ct. 277, 282-284 (1991). However, that portion of G.L.c. 231, §6G providing for the appeal of §6F orders states:
Any party aggrieved by a decision on a motion pursuant to section six F may appeal as hereinafter provided. If the matter arises in the superior, land, housing, or probate court, the appeal shall be to the single justice of the appeals court at the next sitting thereof [emphasis supplied],...
The statute contains no provision for an appeal of a §6F order in the District Court because the statutory scheme in G.L.c. 231, §§6E-6G does not contemplate that any such order will ever be issued. We deem it a bit facile at best for the Landlord to argue that the statutes should be read together to mean that (1) the judge sitting in a District Court jury of six session can exercise the powers of a Superior Court judge, (2) he or she may thus impose §6F sanctions, (3) the §6F order must then be treated as a matter which “arises in the Superior Court” and, therefore, (4) the appeal of the District Court §6F order must be separately appealed to the Appeals Court. We decline to so interpret the statutes. In the absence of any application of §6G to the District Courts, any improper orders for §6F sanctions in the District Court are “matters of law arising in civil cases therein” to be heard on appeal by the Appellate Division. G.L.c. 231, §108.
6. Finally, the Tenant has appealed the judge’s denial of his Mass. R. Civ. R, Rule 59 motion for a new trial. The Tenant has not, however, seen fit to include a copy of his motion in the record to identify the issues raised. O’Donnell v. Bane, 385 Mass. 114, 121 (1982). His brief makes only a cryptic reference to the issues of the last month’s rent and constructive eviction. We have noted that the Tenant failed to preserve any appeal on those issues by neglecting to object to the jury charge. The Tenant could not raise and preserve those issues by a subsequent motion under Rule 59. Cassamasse v. J.G. Lamotte & Son, Inc., 391 Mass. 315, 320 (1984); U.B. Vehicle Leasing, Inc. v. Bender, 1994 Mass. App. Div. 101, 102.
The Tenant also urges that the jury could not have properly returned a verdict on property damage because there was no evidence of the value of the property before or after the loss.
The measure of damages is the diminution in market value and the cost of repairs is evidence on the issue, [citations omitted] From such *106 evidence, with a view if taken, and from photographs, and by applying common sense, experience and judgment, the jury can make an estimate of damages.
Medford Housing Auth. v. Marinucci Bros. & Co., 354 Mass. 699, 703-704 (1968). See Trinity Church in City of Boston v. John Hancock Mut. Life Ins. Co., 399 Mass. 43, 51 (1987). In many cases, the best measure of such damages is the cost or estimated cost of repairs, less any “betterment of real property that enhances it capital value ... and is designed to make the property more useful or valuable as distinguished from ordinary repairs.” Conley v. Scott Products, Inc., 401 Mass. 645, 647 (1988). The judge, without any objection, correctly instructed the jury on this point. A jury is presumed, of course, to have followed the judge’s instructions. Mailman’s Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865, 870 (1993); Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 136 (1992); O’Connor v. Raymark Indus., Inc., 401 Mass. 586, 590 (1988) and cases cited.
The court’s G.L.c. 231, §6F order for sanctions is hereby vacated. The judgment is affirmed in all other respects.
So ordered.

 The Tenant also claims to be aggrieved by the judge’s denial of a motion for a directed verdict on his claim for the last month’s rent. However, he paid no rent for October, occupied the apartment for at least part of the month and caused it to be condemned and tied up for repairs. The Tenant’s brief is devoid of any legal analysis or citation of relevant authority on this issue, and we decline to consider it further. Dist./Mun. Cts. R. A. D. A, Rule 16(a)(4). See also Montello v. Smith, 1998 Mass. App. Div. 43, 45; Harrison v. Aldenberg, 1997 Mass. App. Div. 37, 39; Tynan v. Nelson, 1996 Mass. App. Div. 60, 60-61.

 As Justice Greaney observed of this system in 1990, “[a] civil case subject to the provisions of G.L.c. 231, §§102C, 104 and 109 may move (1) from the Superior Court, (2) to a District or Municipal Court, (3) to the Appellate Division of the District or Municipal Court, (4) back to the Superior Court, and then (5) to one or two of the appellate courts. In its journey, the essentially small case ... may be passed upon by as many as thirteen judges and one jury. Over the years the procedure has become a Rube Goldberg device manufactured piece by piece in a good faith but futile effort to deal with the onslaught of cases confronting our understaffed and resource-meager court system.... There clearly is need for... study and analysis of the transfer system in all its aspects with an eye toward making a transferred case subject to final decision in the District or Municipal Court and subject to a single appeal. A revamped system could considerably advance the efficient disposition of judicial business.” Bender v. Automotive Specialties, Inc., 407 Mass. 31, 35-36 (1990). See also Greenhouse, Inc. v. Trans World Airlines, Inc., 394 Mass. 60, 64-65 (Abrams, J., dissenting) (1985).

The statute was originally in effect through July 1,1998. It was extended to July 1,2000 by Chapter 157 of the Acts of 1998.

 The judge also made written findings and conclusions on the G.L.c. 93A counterclaim which, while succinct, adequately explained his reasoning. Neither party has raised, let alone briefed, the issue of whether the judge’s findings must or did comply fully with the requirements of Mass. R. Civ. R, Rule 52(a). See Willis v. Board of Selectmen of Easton, 405 Mass. 159, 161-162 (1989). As noted, Section 8 of Chapter 358 states that a judge in a District Court jury of six session “shall have and exercise all powers and duties” which a Superior Court judge has in the trial and disposition of civil cases. Section 8 further provides that District Court jury of six trials “shall proceed in accordance with the provisions of law applicable to trials by jury in the superior court....” The issue which we need not address in this case is whether the language of Section 8 makes Mass. R. Civ. R, Rule 52(a) (which requires a Superior Court judge, hearing a case -without a jury, to make findings of fact and conclusions of law) applicable in place of Mass. R. Civ. R, Rule 52(c) (which permits a District Court judge to make findings and conclusions) and Mass. R. Civ. R, Rule 64A (which requires a District Court judge to rule on requests for rulings of law).

 The only one of the G.L.c. 93A rulings objected to was the court’s disposition of request no. 8, which stated: “The plaintiff... never obtained a valid execution for possession against Mr. Fisher. ...’’The judge correctly determined that request no. 8 sought a finding of fact rather than a ruling of law.

 The Landlord has not argued that the court’s order for sanctions is sustainable as an exercise of its inherent authority to award attorney’s fees “where it is in the interest of justice” to punish the contumacious, oppressive or bad faith conduct of a party. See Police Commissioner of Boston v. Gows, 429 Mass. 14, 18 (1999). We conclude, in any event, that the record does not establish that this is the type of “rare and egregious” case, Id. at 19, for which an exercise of the court’s inherent authority should be reserved.